**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Brian Keith Alford,

         Plaintiff,

    v.

Robert Zilles, *et al*.,

         Defendants.

Case No. 3:21-cv-01123

Judge James G. Carr

**ORDER**

This is a *pro se* prisoner civil rights suit filed by Brian Keith Alford (Plaintiff) against Candy Babb, Anitra Barker, Derek Burkhart, Dr. Kathleen Mehan-DeLa Cruz, and Robert Zilles, (Defendants).[1] The Defendants are/were employees of the Toledo Correctional Institution (ToCI).

Plaintiff alleges from 2017-2021, Defendants refused to provide him the boots he requested to aid with circulation and neuropathy related foot issues. (Doc. 11, Doc. 67, Doc. 67-2, Doc. 67-3, Doc. 67-4). He  specifically alleges Health Care Administrator Zilles and Assistant Administrator Barker denied him footwear that was medically needed and approved in 2018. (Doc. 11, PgID 7). He further claims Institutional Inspector Burkhart attempted to justify denial of properly sized boots. (*Id.* at PgID 9).

Since then, Plaintiff has received alternative footwear. Nonetheless, he continues to maintain this litigation, seeking to recover for his claimed pain and suffering.

---

[1] Defendant Babb was a Certified Nurse Practitioner (CNP); Defendant Barker was the Assistant Healthcare Administrator; Defendant Burkhart was the former Correction Warden Assistant/Institutional Inspector; Defendant Dr. DeLa Cruz was a Physician Administrator, and Defendant Zilles was the Healthcare Administrator. Defendant Seger, named in the Amended Complaint, was a Healthcare Administrator, and Defendant Dr. Porter, also named in the Amended Complaint, evaluated Plaintiff on July 19, 2021 and opined the boots requested were not medically necessary.

Pending is the Defendants' Motion for Summary Judgment. (Doc. 62). Plaintiff filed an Opposition. (Doc. 67).[2] Defendants filed their Reply (Doc. 69).

For the reasons that follow, I grant Defendants' Motion and dismiss this case.

## Discussion

### I.    Procedural Posture

On April 16, 2021, Plaintiff filed a Complaint in the Southern District of Ohio.[3] (Doc. 1). The case was transferred to this Court on June 3, 2021. (Doc. 9). Thereafter, on August 18, 2021, Plaintiff amended the Complaint to add Dennis Seger and Dr. Porter as Defendants.[4] (Doc. 11).

Plaintiff was barred from proceeding *in forma pauperis* (IFP) under 28 U.S.C. § 1915(g) (three strike rule). Nonetheless, I granted him leave to proceed IFP in light of his assertions of imminent harm due to lack of medical care. (Doc. 17). But on November 17, 2021, I dismissed the case, finding Plaintiff failed to state a claim for relief under 42 U.S.C. § 1983. (Doc. 18).

Plaintiff filed a Notice of Appeal. (Doc. 20). The Sixth Circuit Court of Appeals, affirming in part, vacated the portion of my decision pertaining to boots and remanded the case. The Court noted, "[w]ith respect to Alford, the current record does not show that he has access to

---

[2] Some of the attachments to Plaintiff's Opposition are illegible, irrelevant to this suit, and/or far precede the applicable statute of limitations, so I will disregard them.

[3] I note that Plaintiff is no stranger to filing lawsuits. At last count, not including his §§ 2241, 2255 and other challenges to his sentencings, he had filed at least sixteen cases against various defendants, seeking various remedies. Six of those cases pertain to boots. *Alford v. Schweitzer,* No. 2:24-CV-194, 2025 WL 1202293, at *6 (S.D. Ohio Apr. 25, 2025); *Alford v. Zilles*, No. 3: 21-CV-1123-JGC, 2021 WL 8315416, at *3 (N.D. Ohio Nov. 17, 2021), *aff'd in part, vacated in part, remanded*, 2023 WL 3696315 (6th Cir. May 22, 2023); *State ex rel. Alford v. Toledo Corr. Inst.,* 2019-Ohio-294, 2019 WL 413264 (Ohio Ct. App. Jan. 19, 2019), *aff'd,* 157 Ohio St. 3d 525; *Alford v. Mohr*, No. 1:15-CV-645, 2018 WL 1136924, at *14 (S.D. Ohio Mar. 1, 2018), *report and recommendation adopted*, 2018 WL 9597455 (S.D. Ohio July 26, 2018); *Alford v. Sadowski,* No. 4:10-CV-2542, 2011 WL 665444, at *1 (N.D. Ohio Feb. 15, 2011); and *Alford v. Vakilian*, 191 F.3d 451 (6th Cir. 1999).

[4] On March 28 2025, I dismissed Dr. Porter from this suit for Plaintiff's repeated failure to perfect service upon him. (Doc. 65, PgID 1358).

2

appropriate alternative footwear." *Alford v. Zilles*, No. 22-3416, 2023 WL 3696315 at *2 (6th Cir. May 22, 2023) (citing *Silva v. Clarke,* 603 F. Supp. 2d 248, 250 (D. Mass. 2009)).

On May 30, 2023, after the remand, I assigned Patricia A. Horner, Esq., under our Court's *Pro Bono* Program, to represent Plaintiff. (Doc. 25). Attempts to settle the matter were unsuccessful. (Doc. 41). So, I proceeded to set scheduling deadlines. (08/14/2024 Minute Order). And Defendants filed their Answer (Doc. 52).

With my approval, Plaintiff's Counsel retained a medical expert, Dr. Donato Borrillo. (See 9/25/2024 and 11/12/2024 Minute Orders). Dr. Borrillo examined Plaintiff and authored a report. (Doc. 62-1, PgID 1340-41). He opined, "it is my professional opinion that [Plaintiff's] peripheral neuropathy is attributable to a vitamin B12 deficiency, most likely stemming from his longstanding hepato-intestinal disease, rather than any issues related to footwear." (*Id.* at 1340).

At some point, Ms. Horner informed the Court that irreconcilable differences had arisen between her and Plaintiff. (Doc. 42). So, I granted her leave to withdraw as counsel. (See 09/25/24 Minute Order). Thereafter I, *sua sponte*, appointed Joseph Sobecki as successor counsel. (Doc. 44, Minute Order 10/03/24). In time, Attorney Sobecki sought leave to withdraw for similar reasons. (Doc. 55, Doc. 57). On December 27, 2024, I granted his Motion. (Doc. 56).

After Defendants filed for summary judgment, Plaintiff, again *pro se,* sought leave to, among other things, extend the discovery deadline and secure another expert (since he did not appear to concur with the first report). (Doc. 58, Doc. 59, Doc. 60, Doc. 63). I denied each of his requests and set a briefing schedule on Defendants' Motion for Summary Judgment.[5] (Doc. 65).

---

[5] Plaintiff filed "Objections" to my Order of March 28, 2025. (Doc. 66). Defendants filed a Response. (Doc. 68). In granting Defendants' Motion for Summary Judgment, I hereby deny Plaintiff's out-of-rule Objections as moot.

## II.    Facts

Plaintiff is incarcerated and in the custody of the Ohio Department of Rehabilitation and Correction (ODRC), serving lengthy consecutive sentences for a 1984 robbery conviction in state court. *State of Ohio v. Alford*, No. 83 CR 2225 (Montgomery CCP 1983).

In 2002, Plaintiff was convicted in federal court of armed bank robbery and sentenced to 144 months incarceration. The Sixth Circuit affirmed his conviction and sentence. *Alford v. United States*, 116 F. App'x 706 (6th Cir. 2004), *cert. denied*, 544 U.S. 912 (2005). After serving his federal term of imprisonment, Plaintiff was returned to the custody of ODRC and is serving out the remainder of his state sentence. *Alford v. Rice,* No. 3:24-CV-35, 2024 WL 1632856, at *2 (S.D. Ohio Apr. 16, 2024).[6]

Plaintiff has a complex medical history that includes hypertension, eye disease, hepatitis, liver disease, carpal tunnel syndrome, cervical spondylosis, benign prostatic hyperplasia, lumbar disc disorder, and ulnar nerve injury. (Doc. 62-1 Hayes Aff., PgID 276). Specific to this case, ToCI's physician, Dr. Porter, diagnosed Plaintiff with peripheral sensory neuropathy. (*Id.*). Dr. Porter attributed this to a vitamin B12 deficiency. (*Id.* citing Plaintiff's Medical Records).

On November 4, 2017, three days after arriving at ToCI, Plaintiff filed an internal communication (kite) requesting a size 12EEE boot to accommodate pain issues. (Doc. 67-2, PgID 1411-12). The Captain responded, advising him to contact medical for approval. (*Id.*).

Though unclear what transpired after November 4th, the documents show Defendants ordered Plaintiff boots on or about January 8, 2018. (*Id.* at 1405-06). Plaintiff claims the boots

---

[6] Plaintiff has since been housed at multiple ODRC institutions, including ToCI (11.1.17 – 1.5.21); Mansfield Correctional (MCI) (1.5.21 – 1.19.22); and Ross Correctional (RCI) (1.19.22 – Present). (Doc. 62-1, PgID 1333-39).

4

ordered were a 12EEEE and were too wide. Defendants claim the correct size was ordered. Regardless, Defendants reordered the boots, and this time they were a size 12EE. (*Id.* at 1406).

Plaintiff complained the boots were too narrow, but according to Plaintiff, the quartermaster advised size 12EEE was not available. (*Id.*). A handwritten response indicates, "Medical said once you accept them, that is what you get. Speak with them." (*Id.*). According to Plaintiff, the Warden referred him to unit staff. (*Id.*).

Plaintiff filed more kites on February 22, February 27, and March 10, 2018. (*Id.* at 1404-06). Each time he complained medical provided a pair of 12EE boots, but he needed size EEE and none of the approved vendors provides shoes that wide. (*Id.* at 1416). He requested special permission to order boots from the Hitchcock Shoe Co. (*Id.*). He was again told to see his unit staff for assistance. (*Id.*).

On March 22, 2018, Plaintiff grieved the matter, continuing to seek permission to order new boots. (Doc. 62-1, PgID 1291-93), Doc. 67-3). And on or about April 6, 2018, Defendant Barker informed Plaintiff he would not be permitted to order boots from a company of his choosing. (Doc. 62-1 Burkhart Aff. PgID 1277-78). Barker informed him he could order tennis shoes, which would meet his medical needs. (*Id.*, ref. TOCI03 I 8000369). Yet, Plaintiff continued to attempt to order boots from Hitchcock shoes, which was prohibited as prospective contraband. (*Id.*, ref. TOCI062I001903).

Plaintiff relayed that he was told by former HCA Kroggel, AHCA Barker, and Unit Manager Hernandez that he was not permitted to purchase boots from Hitchcock due to possible drugs or contraband. Defendant Zilles responded: "as discussed on 3/28/18 with Ms. Barker, Ms. Hernandez, unit manager, and myself, you will be able to purchase a pair of athletic shoes…"

Defendant Burkhart denied the grievance because he found the boots ordered were the appropriate size - 12EEE. He noted in the grievance response that Plaintiff had opened them, tried them on and said they were too big. (Doc. 67-3; Doc. 62-1 Barker Aff., PgID 1342-43). So Defendants reordered the next size down (12EE). (*Id.*). Plaintiff tried these on, initially stating they fit. (*Id.*) He signed for them, but then later claimed he did not like them. (*Id.*). Due to institution policy, the institution could not return the boots after acceptance. (Doc. 62-1 at 1342-43). Burkart also noted in the grievance response that Defendants held a meeting with Plaintiff, who allegedly wore the boots he claimed did not fit. (*Id.*).[7]

On October 15, 2018, Plaintiff submitted medical paperwork and a request for accommodation to the "ADA Coordinator." (Doc. 67-2, PgID 1416-18). And a month later, he filed more kites, requesting a new pair of size 12EEE boots for circulatory problems, degenerative spine disorder, scoliosis, and cervical and lumbar injuries. He forwarded medical's response, as well as responses he received on November 4, 2017, January 8, 2018, February 6, 2018, February 22, 2018, February 27, 2018, and March 12, 2018. (Doc. 67-2, PgID 1401-2).

Still determined, on or about November 16, 2018, Plaintiff wrote to AHCA Barker requesting size EEE for his medical issues. (Doc. 67-2. at 1402). She advised she does not make the determination, and directed Plaintiff to fill out an "Inmate Health Service Request form." She further informed Plaintiff he could purchase his own or discuss with his Unit Manager. (*Id.*).

On December 17, 2018, the Warden, Sean Bowerman, informed Plaintiff the boots he had were grandfathered in, but the institution could no longer order boots from package vendors due

---

[7] Plaintiff, of course, disputes this, arguing the originally ordered boots were size 12EEEE and the second pair 12EE. He states he complained upon receipt they did not fit properly but wore them because that was the best he had.

to security risks. He directed Plaintiff to work with medical to get those boots ordered. (Doc. 67-3). Plaintiff again grieved the issue. ToCI denied it as the issue was previously addressed. (*Id.*).

Plaintiff continued to complain about his footwear through the kite system in early 2019. (Doc. 1-1, PgID 17-21). While Plaintiff continued to complain and file grievances about other issues, the records submitted show no communications from February of 2019 until the June of 2020 pertaining to the boot issue.

On June 15, 2020, Plaintiff communicated with his Unit Manager that his son would be ordering his "medically approved footwear" from Hitchcock Shoes. (Doc. 67-2, PgID 1397). He wrote again on July 30th to explain the order would be delayed because of his son's surgery. (*Id.* at 1398.). It appears Plaintiff's son (Tearayne Jones) ordered three pair of shoes – running shoes, slides, and boots on or about September 9, 2020. (Doc. 67-2, PgID 1397-1400). For unknown reasons, all were ordered in size 12EEEE not 12EEE. (*Id.* at 1399).

On October 20, 2020, Plaintiff wrote to <mark>Penny Abbott</mark> informing her that Dr. Porter diagnosed him with neuropathy on October 15th and that Dr. Porter requested they order orthopedic boots for Plaintiff. (Doc. 1-1, PgID 14). He further stated the gym shoes he ordered were " contributing to the problem and useless." (*Id.*). He requested permission to order orthopedic gym shoes in the future from Amazon instead of Hitchcock. (*Id.*). On November 25, 2020, Plaintiff sent a kite to Defendant Zilles requesting medical to order his boots. Hannah Kroggel responded on December 1, 2020, prompting Plaintiff's response:

> Ms. Barker, after my visit with Dr. Porter yesterday and being advised that you were attempting to provide 123E boots through OPI, I would like to kindly request that you send the mailroom an email verifying approval for me to purchase medically approved boots/gym shoes through Amazon.com. I purchased a pair of gym shoes from Hitchcock.com and they sent the wrong size (124E) and they were to [sic] wide. Amazon.com could meet my needs and I will simply purchase them since the institution is experiencing budget cuts." (Doc. 67-3. at 1425).

7

Defendant Zilles responded, "…if you would like to buy your own shoes and not have them provided through medical, please contact your unit staff. Also please make sure that you are purchasing shoes, not boots so they don't get sent back." He inquired, "SO you no longer want to order your own boots through Amazon?" (*Id.*). On December 2nd, Plaintiff clarified, "…[Y]es, I would rather order boots/shoes through Amazon as OPI cannot provide 123E boots." (*Id.*).

The record is unclear about what transpired between December of 2020 and March of 2021, but on March 9, 2021, Plaintiff sent a kite to Penny Abbott asking her to notify the package room that he was going to be ordering "medically approved footwear in the next two to three weeks…from Hitchcock Shoes…." (*Id.* at 1424). Ms. Abbott responded that Plaintiff would need to order these through medical. (*Id.*).

The following day, Plaintiff sent another kite about Dr. Porter approving his boot order and Ms. Kroggel asking for an email regarding the approval. (*Id.*at 1422). Abbott responded the next day "I will not. Boots NOT approved." (*Id.* at 1423).

Also on March 10, 2021, Plaintiff, responding to Defendant Zilles's communication from November 25, 2020, wrote:

> In your response dated 11-25-20 regarding the purchase of medically approved footwear, you advised that I could only order shoes, not boots. The boots I need are non-safety toe and six inch height, and the footwear ordered by medical here at TOCI were in fact boots. The doctor approved ordering boots at your expense, but Mr. Copely advised the [sic] because boots would be ordered by OPI, they would not be very well made. At that time I agreed with Mr. Copely that I would in fact order boots myself. Because there is a medical need for the boots due to neuropathy and circulatory problems, you have to notify mailroom that boots are medically approved and not unit staff. I have ongoing litigation on this issue, and have been trying to obtain properly fitting boots since arriving in the state system in 2011.

(Doc. 67-3). Mr. Zilles responded, "You will be evaluated by Ms. Babb today to decide the appropriate footwear for your medical needs." (*Id.*).

8

Again, it is unclear what occurred next, but on or about March 29, 2021, Plaintiff ordered Size 12EEE boots from Hitchcock, along with runners, Moc toes, and slides. (Doc. 67-3). Then, on June 29, 2021, Plaintiff requested a reasonable request form, acknowledging receipt of the boots on June 21st. He was attempting to justify the medical portion. (Doc. 67-4, PgID 1446).

On July 19, 2021, pursuant to Policy 68-MED-14, medical consulted with "Collegial Review" about Plaintiff's situation. Collegial Review occurs when the Office of Correctional Health Care performs a medical collaborative review of an individual patient when requested by an institutional advanced level provider. Collegial Review determined that a pair of tennis shoes with high ankle support would suffice for any gait instability, and boots were not necessary or indicated. (Doc. 62-1 Hayes Aff., PgID 276, citing DRC 000200; DRC 000121).

So, on July 21, 2021, ADA Coordinator, Troy Reed, denied the accommodation request indicating the boots were not approved. (*Id.* at 1447-48). Mr. Reed further noted Dr. Porter, who evaluated Plaintiff on July 19th, indicated the boots were not medically necessary for his condition, and high top tennis shoes might be an alternative. (*Id.* at 1448).[8]

### III.     Legal Analysis

####      a.  Summary Judgment Standard

Summary judgment should be granted if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is granted "against a party

---

[8] ADA Coordinator Joshua Gajewski denied a similar ADA request in 2018. He indicated, "it was determined that the offender accepted a pair of boots from the medical department on 2/21/2018…The offender is still in possession of said footwear and must address sizing issues with the department that permitted issuance or submit an informal complaint." (*Id.* at 1451-52).

who fails to make a showing sufficient to establish an essential element…on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing the documents before me, I draw all reasonable inferences in a light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). In doing so, I nevertheless find Defendants are entitled to summary judgment as outlined below.

### b.  42 U.S.C. 1983

Section § 1983 itself creates no substantive rights. It provides a remedy for deprivations of federal rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985).

To sustain a § 1983 action, a plaintiff must establish two elements: (1) that he suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States; and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991).

### c.  Eighth Amendment

Plaintiff's ultimate cause of action and the impetus underlying his § 1983 claim is grounded in the Eighth Amendment to the U.S. Constitution. Only a prison official's "deliberate indifference" to a prisoner's serious medical needs presents a claim under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

Federal courts are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Young v. Hall,* No. 2:19-CV-00050, 2020 WL 8768298, at * (W.D. Mich. Dec. 9, 2020), *report and recommendation adopted*, No. 2:19-CV-50, 2021 WL 508306 (W.D. Mich. Feb. 11, 2021) (citing *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014)) (other citations omitted). See also, *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004).

A claim for deprivation of adequate care requires proof of both an objective and subjective element. First, a deprivation must be "objectively, 'sufficiently serious,' resulting 'in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). Next, the subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834).

Deliberate indifference (to one's medical needs) "entails something more than mere negligence." *Farmer, supra* at 835. But it can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* In other words, Plaintiff must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (citations omitted). *See also, Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

To overcome these substantial legal hurdles, Plaintiff must essentially show that each defendant named in his Amended Complaint acted with a mental state "equivalent to criminal recklessness." *Young v. Hall, supra* at *3-5; *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). This showing requires proof that Defendants "subjectively perceived facts from which to infer substantial risk to [Plaintiff]... and [they] then disregarded that risk by failing to take reasonable measures to abate it." *Id.*

Courts in the Sixth Circuit have generally rejected claims similar to Plaintiff's. As one court noted, "...a complaint of ill-fitting shoes [does] not...constitute a deprivation of the

11

'minimal civilized measure of life's necessities,' for it to be objectively sufficiently serious."

*Tucker v. Ganshimer*, No. 1:07CV1035, 2008 WL 3874687, at *4 (N.D. Ohio Aug. 15, 2008) (Economus, J.) (quoting *Jones v. Hood,* 2006 WL 1984274, at * 8 (E.D. Mich 2006).

In *Tucker,* the plaintiff was a prisoner at Ohio's Lake Erie Correctional Institution. He suffered from hammertoe and sued the warden and medical staff under 42 U.S.C. § 1983, asserting cruel and unusual punishment in violation of the Eighth Amendment. He claimed his feet hurt everyday due to ill-fitting tennis shoes and boots defendants provided. Plaintiff states he repeatedly complained, but the defendants took no further action due to prison policy.

Judge Economus, in granting the defendants' motion, wrote:

> Tucker's assertion that there was a two-year shoe replacement policy actually negates the medical staff's alleged deliberate indifference. Tucker's shoes were replaced in February 2005 following his June 2004 complaint about worn shoes and his grievances that he was "qualified" for new footwear. This scheduled replacement had no nexus to complaints about medical needs not being met. Granted the record demonstrates that Tucker did begin to complain about ill-fitting shoes afterward. However, two podiatry consults were provided, Tucker was complaining about his feet hurting due to a shoe order which the medical staff questioned, and Tucker was provided with prescribed footwear. Once a new prescription was issued, there was delay in obtaining the extra depth size 15 footwear. However, Tucker does not demonstrate that this delay was intentional.

*Id.* at *7, (citing, *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

Other courts, both within the Sixth Circuit and beyond, have made similar findings pertaining to prisoner footwear. *Young v. Hall,* 2020 WL 8768298, at *5-9 ("Under these circumstances, the act of giving Young temporary shoes, even if they did not fit properly, did not violate [the] Eighth Amendment."); *Glenn v. Corizon Healthcare, Inc.*, No. 2:17-CV-10972, 2019 WL 2385203, at *1–5 (E.D. Mich. Jan. 18, 2019), *report and recommendation adopted*, No. 17-10972, 2019 WL 1970698 *11 (E.D. Mich. May 3, 2019) (plaintiff, claiming that defendant had 'a state wide policy, custom, and practice' of not providing prisoners with orthopedic or

medically issued shoes or boots and that it discontinued his boots as a cost savings measure, failed to establish a "policy of indifference so widespread, permanent and settled as to have the force of law…."). [9]

Just as in the cases cited *supra,* Plaintiff has failed to show that Defendants acted with deliberate indifference towards his medical needs, failed to protect him from a known harm, or subjected him to conditions of confinement that violated the Eighth Amendment. The right to be free from cruel and unusual punishment does not include the right to accommodations of choice.

Defendants made reasonable attempts to aid Plaintiff. They ordered boots. Whether they were too wide or too narrow is irrelevant. Defendants were not deliberately indifferent. They advised Defendant he was free to purchase ankle top tennis shoes when the boots were banned. And most importantly, Plaintiff's "serious medical need" is a critical issue. Dr. Porter and Plaintiff's expert, Dr. Borrillo, both indicated the boots Plaintiff sought, specifically size 12EEE, were not medically necessary because his neuropathy was caused by a Vitamin B12 deficiency.

### d.    Qualified Immunity

---

[9] Other courts throughout the country have made similar findings. *See, e.g. Carter v. Meisner*, 639 F. App'x 379, 382 (7th Cir. 2016) (Defendants were responsive to complaints about footwear, and even if boots were inadequate, "the defendants were entitled to 'rely on the expertise of medical personnel….'") (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)); *Romero v. Vargo*, 687 F. Supp. 2d 1202, 1209-14 (D. Or. 2009), *aff'd,* 471 F. App'x 584 (9th Cir. 2012) (granting summary judgment for all defendants with the exception of the prison physician where genuine issue of fact remained as to whether he disregarded orders from another physician and ordering an expert podiatrist for plaintiff); *Ganther v. Dalton,* 396 F. App'x 105, 106 (5th Cir. 2010) (plaintiff's request to have prison-issued boots replaced denied due to prison policy did not constitute deliberate indifference); *Harris v. Allen,* No. 2:09-CV-965-WC, 2011 WL 6090106, at *1 (M.D. Ala. Dec. 7, 2011) (allegations did not support that defendants were deliberately indifferent to a serious medical problem where defendants provided state-issued boots, instead of tennis shoes, which he claimed caused pain and swelling); *Ellibee v. Roberts*, No. 08-3189-SAC, 2009 WL 103639, at *1-2 (D. Kan. Jan. 14, 2009) (granting the defendants' motion to dismiss the plaintiff's § 1983 suit against eight KODC employees for alleged failure to provide size 13 narrow boots. "Plaintiff's dissatisfaction with the footwear provided by defendants, and his challenge to a state prison regulation, present no cognizable constitutional claim for the purpose of seeking relief under 42 U.S.C. § 1983); *Williams v. Keane*, 940 F. Supp. 566, 570-72 (S.D.N.Y. 1996) ("By claiming that defendants failed to satisfy his request for a specific type of orthotics, plaintiff is at best complaining that he was not given the particular type of shoe he wanted….These are at best malpractice claims which are clearly not sufficient (for a § 1983 action). Furthermore, qualified immunity protects defendants from liability for damages in their individual capacity.")

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

Determining whether a defendant is entitled to qualified immunity generally requires two inquiries: First, viewing facts in a light most favorable to him, has the plaintiff shown a constitutional violation occurred? Second, was the right clearly established at the time of the violation? *Phillips, supra* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). The relevant inquiry is "whether existing precedent placed the conclusion that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate." *Young v. Hall*, *supra* at *10–11 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

 Defendants argue they are immune from Plaintiff's § 1983 action for civil damages for performing discretionary functions. *See, Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald* at 818). I agree. Plaintiff bears the burden of defeating an immunity defense. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999); *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). I find Plaintiff has not met this burden.

A reasonable person, standing in any one of the Defendants' shoes, would not know – or even think – that ordering and reordering boots for a prisoner, then later having to deny his

request to order more boots, due to prison policy, would – or could – constitute a constitutional violation. This is bolstered by the fact Defendants attempted to accommodate Plaintiff, and each time there was some excuse – too wide; too narrow; order from this company, then that company.

In addition, Defendants allowed Plaintiff to have high-top tennis shoes, which were medically prescribed, in lieu of the boots. And the prison determined they could no longer allow boot orders from external vendors due to possible drugs or contraband risks. Most importantly, Plaintiff's own expert opines the source of his foot pain (neuropathy) is caused – not by improperly fitting footwear – but by his own medical condition.

Therefore, I find Defendants are entitled to qualified immunity from suit.

### E.      Absolute Immunity

The Eleventh Amendment bars suits against the State and its agencies for which it does waive immunity, regardless of the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

Cases filed against individuals in their official capacity, are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Consequently, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated it. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Seminole Tribe v. Florida,* 517 U.S. 44, 59 (1996). Ohio has not done so. *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012); *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993).

Consequently, to the extent that Plaintiff sues the Defendants in their official capacities for monetary damages, the Eleventh Amendment bars such claims.

### Conclusion

Plaintiff has failed to prove that any one of the Defendants was deliberately indifferent to his medical needs. He therefore fails to establish a claim of cruel and unusual punishment under the Eighth Amendment. Moreover, Defendants are entitled to immunity from suit.

It is, accordingly, hereby ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 62) be, and the same hereby is, **granted**;

2. Plaintiff's Amended Complaint (Doc. 11) be, and the same hereby is, **dismissed**;

3. Plaintiff's "Objections" to my Order of March 28, 2025. (Doc. 66) are **denied as moot**.

An appeal from this decision could not be taken in good faith and shall not be allowed without prepayment of the requisite filing fees.

So ordered.

Date: June 2, 2025

/s/ James G. Carr
Senior U.S. District Judge

16